805 F.2d 1034
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul K. FREEMAN, Plaintiff-Appellant,
v.
RAMADA INN, INC. and Detective Jenney; and Detective
Balogh, Defendants- Appellees.
 No. 83-3192.
 United States Court of Appeals, Sixth Circuit.
 Oct. 2, 1986.
 
 Before MILBURN and RYAN, Circuit Judges, and BERTELSMAN, District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiff Paul Freeman appeals the district court's order granting summary judgment to defendants, Ramada Inn, Inc. and Detectives Doug Jenney and Dennis Balogh, in this action brought pursuant to 42 U.S.C. Sec. 1983, alleging that defendants, under color of state law, violated plaintiff's rights under the Fourth, Ninth and Fourteenth Amendments of the Constitution and under 18 U.S.C. Sec. 2511. On appeal Freeman's argument that the district court erred in granting summary judgment on collateral estoppel grounds is basically twofold. First, plaintiff argues that the district court did not have an adequate record to determine whether he had been afforded a full and fair opportunity to litigate his claims in the state court. Plaintiff's second argument, which has been raised for the first time on appeal, is that one of the prerequisites to the application of collateral estoppel, mutuality of parties, has not been met in the instant case. Since we find no merit in plaintiff's first argument and do not reach plaintiff's second argument, we affirm.
 
 I.
 
 2
 On August 19, 1982, Freeman filed a pro se complaint alleging that on July 24, 1981, the individual defendants, while on duty with the Summit County Sheriff's Department, were notified of a possible robbery and shooting at a local coin shop. En route to the coin shop, the defendants received a report that there was a man with gunshot wounds in the lobby of the Ramada Inn. Defendants went to the Ramada Inn, conducted a brief investigation, and discovered that the man who had been shot was John Nerlinger, who was staying in the same room at the Ramada Inn with Larry Simpson. After further investigation, Detective Jenney was informed by a Ramada Inn employee that a telephone call had just come in for Larry Simpson. Jenney advised the employee to transfer the call to a desk phone in the lobby. According to defendant Jenney's testimony at the state criminal trial, a transcript of which was attached to the complaint, Jenney picked up the phone and a voice said, "Tony," and Jenney said, "Yes," implying that he was Tony. A discussion about the robbery ensued. At the close of the conversation, defendant Jenney asked for the caller's telephone number, and the caller complied. After hanging up, defendant Jenney contacted the Ohio Bell Security Office and obtained the name and address of the caller, plaintiff-appellant Freeman. Freeman was subsequently arrested and convicted in Ohio state court of complicity in the commission of the aggravated robbery and kidnapping of the coin shop owner.
 
 
 3
 In his pro se complaint, Freeman alleged that the interception of this telephone call by defendants violated the Fourth Amendment of the Constitution and 18 U.S.C. Sec. 2511(1)(a) and (c), which prohibit the willful interception of a wire or oral communication and the willful disclosure of the contents of the communication. Freeman also alleged violations of the Ninth and Fourteenth Amendments as well as certain Ohio statutes,[1] with respect to which Freeman alleged the court had pendent jurisdiction. Freeman further alleged that the individual defendants were acting under color of state law and that Ramada Inn was acting "in a public function" with the individual defendants in carrying out an official investigation, thereby acting under color of state law as well. He requested declaratory relief and both compensatory and punitive damages.
 
 
 4
 The answers of both the Ramada Inn and the individual defendants raised the affirmative defense of collateral estoppel, and, on January 25, 1983, the Ramada Inn moved for summary judgment and/or dismissal of plaintiff's complaint on that ground. As exhibits, Ramada Inn attached documentation of the criminal prosecution and conviction of Freeman in the Summit County Court of Common Pleas, as well as the decision of the Ohio Court of Appeals, Ninth Judicial District, affirming his conviction, and a certified copy of the docket of the Ohio Supreme Court indicating that Freeman's motion for leave to appeal was overruled and dismissed sua sponte for the reason that the court found no substantial constitutional question existed. In the state trial court, Freeman's motion, under the Fourth Amendment and 18 U.S.C. Secs. 2511 and 2515, to suppress the evidence obtained from the "intercepted" telephone call had been denied, and the Ohio appellate court had rejected this assignment of error. Based on these exhibits, the Ramada Inn contended that Freeman was collaterally estopped from relitigating the issues ruled on by the state courts.
 
 
 5
 On March 3, 1983, the district court granted summary judgment to defendants on collateral estoppel grounds and dismissed the complaint, with prejudice, as to all the defendants, noting that although the individual defendants did not file motions to dismiss or for summary judgment, their answers to the complaint asserted the collateral estoppel defense.
 
 II.
 
 6
 "[U]nder the Full Faith and Credit Act [28 U.S.C. Sec. 1738] a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." Parsons Steel, Inc. v. First Alabama Bank, 106 S.Ct. 768, 771 (1986). See also Migra v. Warren City School District Board of Education, 104 S.Ct. 892, 898 (1984) (holding that Sec. 1738 is applicable in section 1983 claims). However, "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of the procedures followed in the prior litigation." Montana v. United States, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 979 n. 11 (1979) (quoted in Kremer v. Chemical Construction Corp., 456 U.S. 461, 481, 102 S.Ct. 1883, 1897 (1982)). With this background, we turn to plaintiff's arguments on appeal.
 
 
 7
 A. Full and Fair Opportunity to Litigate.
 
 
 8
 We find no merit in Freeman's contention that the district court could not properly determine whether he had been afforded a full and fair opportunity to litigate his privacy claim in the state courts because the district court did not have the entire record of the state court proceeding. Neither appellant nor his appointed counsel on appeal point to any portion of the state court record or transcript at the suppression hearing which supports the claim that Freeman was denied a full and fair opportunity to litigate this issue in the state courts. Freeman contends that there should be a per se requirement that the district court view the entire state court record in determining whether a section 1983 claim has been given a full and fair opportunity to litigate a claim in the state courts. No authority is cited for this proposition, and we do not understand it to be the law. See Kremer v. Chemical Construction Corp., 456 U.S. 461, 481, 102 S.Ct. 1883, 1897 (1982). Accordingly, we reject appellant's first argument.
 
 
 9
 B. Mutuality.
 
 
 10
 Before we turn to appellant's next argument, it is necessary to set forth the procedural history of this case in more detail. On August 19, 1982, plaintiff filed his complaint in the District Court for the Northern District of Ohio. Defendants Jenney and Balogh filed answers on September 24, 1982. Defendant Ramada Inn filed an answer on November 23, 1982. Both answers raised collateral estoppel as a defense. On January 25, 1983, defendant Ramada Inn filed a motion for summary judgment or for dismissal based on the defense of collateral estoppel. On February 10, 1983, plaintiff filed a twelve-page memorandum opposing Ramada Inn's motion for summary judgment. In this memorandum, plaintiff basically argued that he had not had a full and fair opportunity to litigate his claims before the state court. Plaintiff did not argue the absence of mutuality of parties. On February 18, 1983, defendant Ramada Inn filed a motion for leave to file a reply brief. Ramada Inn attached a reply brief to the motion, and on February 28, 1983, the district court granted the motion and accepted the brief. On March 3, 1983, plaintiff filed a motion for leave to file a brief opposing Ramada Inn's reply brief. On the same day, the district court handed down its order granting summary judgment and dismissing the case as to all defendants.
 
 
 11
 On appeal, for the first time, plaintiff argues that Ohio continues to require mutuality of parties as a requisite to the application of the doctrine of collateral estoppel. Plaintiff asserts that mutuality is absent here.
 
 
 12
 "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." Liberles v. County of Cook, 709 F.2d 1122, 1126 (7th Cir.1983). See also Wright v. Holbrook, --- F.2d ----, No. 84-6104, slip op. at 9 (6th Cir. July 11, 1986) (noting "it is fundamental that 'parties cannot ... advance new theories or raise new issues in order to secure a reversal of the lower court's' grant of summary judgment.") (quoting 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2716 (2d ed. 1983)).
 
 
 13
 This rule precluding parties from raising new issues on appeal, however, is not absolute. Appellate courts will consider new issues when the proponent of the new issue can show that manifest injustice would otherwise result. Kline v. Johns-Manville, 745 F.2d 1217, 1221 (9th Cir.1984); Schmidt v. Polish People's Republic, 742 F.2d 67, 70 (2d Cir.1984). Except when the error is plain and obvious, the focus of our inquiry is not on the merits of the underlying argument but, rather, on the appellant's reason(s) for failing to advance the argument before the district court. See, e.g., Alexopulos v. Riles, 784 F.2d 1408, 1411 (9th Cir.1986). As noted by one court, "Before this court will address such an issue the proponent 'must show exceptional circumstances why the issue was not raised below.' " International Union of Bricklayers & Allied Craftsmen Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985) (quoting Taylor v. Sentry Life Insurance Co., 729 F.2d 652, 655-56 (9th Cir.1984) (per curiam)).
 
 
 14
 In the instant case, plaintiff states that he would have raised the issue of mutuality "in his Reply to Defendant Ramada Inn's Reply Brief," if the district court had not denied his motion to file such a brief. Clearly, within the procedural context set out above, the appropriate time for plaintiff to have raised the mutuality issue was in his brief in response to the motion for summary judgment. The denial of plaintiff's motion to file a reply brief to defendant's reply brief is not an exceptional circumstance which persuades this court that we should consider the issue.
 
 
 15
 In arguing that he should have been given an opportunity to submit a reply brief to defendant Ramada Inn's reply brief, plaintiff reiterates the fact that he was pro se. The circuits have not clearly defined what obligation district courts have in advising pro se litigants of the measures necessary to oppose motions for summary judgment. Compare Jacobsen v. Filler, 790 F.2d 1362, 1364-67 (9th Cir.1986) (no duty to inform pro se litigant in ordinary civil case) with Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir.1985) (in pro se section 1983 action brought by prisoner district court has obligation to give a ten-day advance notice to pro se litigant). However, plaintiff does not argue that he was not given adequate notice and, similarly, expressly does not argue that the "district court was required to sua sponte determine" the mutuality issue. Brief for Plaintiff-Appellant (filed April 13, 1983) at 16. Instead, plaintiff argues that the district court should have given him another chance and that had the district court given him another chance he would have raised the mutuality issue. Assuming the latter to be true,[2] we are unable to conclude that a litigant who is aware of his obligation to respond in order to avoid summary judgment presents the court with exceptional circumstances when he claims that he would have raised the issue if only he had been given another chance. Cf. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.1985), cert. denied, 106 S.Ct. 1475 (1986) (pro se litigants Sec. 1983 action dismissed for failure to state a claim, district court affirmed noting that although pro se complaints are read liberally, district courts are not required to "conjure up questions never squarely presented to them."); Wightman v. Bureau of Alcohol, Tobacco & Firearms, 755 F.2d 979, 983 (1st Cir.1985) (in appeal raising issues not addressed to district court, pro se litigant status considered but found insufficient because pro se litigant had "more than ample opportunity to present his case."); Emory v. Texas State Board of Medical Examiners, 748 F.2d 1023, 1027 n. * (5th Cir.1984) (in appeal from dismissal of a pro se litigant's Sec. 1983 claim court refused to consider "contentions ... not fairly presented to the district court").
 
 
 16
 Moreover, plaintiff's reliance on his pro se status as a reason for not advancing the argument below is unpersuasive for another reason. Federal courts have held pro se litigants to a less stringent standard in other contexts based on the recognition that pro se lawsuits "represent the work of an untutored hand." Beaudett, 775 F.2d at 1271. Even a brief perusal of the record in the instant case reveals that although plaintiff may not have had formal legal training, he has not been handicapped by that fact. For example, plaintiff's Memorandum Opposing Defendant Ramada Inn's Motion for Summary Judgment was clear, concise, logically laid out, and obviously well researched. Similarly, the quality of plaintiff's pro se brief filed before this court is well above average.[3] Furthermore, the record reveals that although plaintiff may not have been formally tutored in the Rules of Civil Procedure, he certainly had a good, working knowledge of the Rules. Perhaps most importantly here, plaintiff was aware of his obligation to respond to the motion for summary judgment and, in fact, did respond raising arguments which he supported with an abundance of authority. When, as here, the work of a pro se litigant reveals that he is familiar with the procedural requirements of the judicial system and that he has access to legal materials, the need for favorable treatment is, if not absent, decreased.
 
 
 17
 Finally, in determining whether manifest injustice would result from the refusal to consider an issue raised for the first time on appeal, it is important to consider whether the alleged argument was plain and obvious. See, e.g., Fehlhaber v. Fehlhaber, 681 F.2d 1015, 1030 (5th Cir.1982), cert. denied, 464 U.S. 818 (1983). Accordingly, we turn to the argument presented for the first time on appeal. Plaintiff urges that mutuality of parties is required under Ohio collateral estoppel law and that mutuality is absent in the instant case. In making this argument, plaintiff points out that although some courts have abandoned the mutuality rule, the Ohio Supreme Court in Goodson v. McDonough Power Equipment, Inc., 2 Ohio St.3d 193, 443 N.E.2d 978 (1983), "reaffirm[ed] [their] prior general stance that collateral estoppel may generally be applied only when the party seeking to use the prior judgment and the party against whom the judgment is being asserted were parties to the original judgment or in privity with those parties."
 
 
 18
 Defendant Ramada Inn responds that in Hicks v. De La Cruz, 52 Ohio St.2d 71, 369 N.E.2d 776 (1977) (per curiam), the Ohio Supreme Court "enunciated an exception to the mutuality of estoppel rule holding that non-parties were entitled to collateral estoppel if it was proven that the party estopped had the issue resolved against him in a prior litigation."
 
 
 19
 The correct resolution of this issue is not obvious. It could be pointed out that the holding of Hicks was that the appellees in that case "were represented parties or were in actual privity with represented parties in [the previous adjudication] and were accorded a full and fair day in court in that proceeding." 52 Ohio St.2d at 75. Based on that, it could be argued that the Ohio Supreme Court did not relax the mutuality requirement but instead applied the traditional doctrine of mutuality of parties.
 
 
 20
 To so hold, however, would be inconsistent with the Ohio Court of Appeals' interpretation of Hicks and Goodson. In McCrory v. Children's Hospital, No. 85 AP-777 (Court of Appeals of Ohio, Franklin County, March 11, 1986) (available on WESTLAW, OH Database),[4] for example, the Ohio Court of Appeals recently concluded, based on Hicks and Goodson, that mutuality of parties was not required under the facts of that case. The procedural history of McCrory was given as follows:
 
 
 21
 On July 29, 1976 and October 27, 1976 respectively, plaintiffs [the McCrorys] filed suit in common pleas court and in the Court of Claims for the state of Ohio against, among others, Dr. Vecozols.
 
 
 22
 The common pleas court dismissed plaintiffs' complaint otherwise than on the merits without prejudice pursuant to R.C. 2305.19.
 
 
 23
 The court of claims dismissed Dr. Vecozols as a party to that action in accordance with Civ.R. 41(A)(1)(a), which provides for voluntary dismissal of a defendant by the plaintiff.
 
 
 24
 The action in the court of claims proceeded to trial and a final decision was rendered against the state of Ohio and the Ohio Youth Commission. Plaintiffs then refiled their action in the Franklin County Court of Common Pleas against, among others, Dr. Vecozols.
 
 
 25
 Dr. Vecozols filed a motion for summary judgment on res judicata and collateral estoppel grounds based upon the decision of the court of claims rendered July 13, 1979.
 
 
 26
 On April 19, 1982, the common pleas court overruled the defendant's motion for summary judgment, finding res judicata did not bar plaintiffs' action, but that collateral estoppel did apply to prevent relitigation of two issues of proximate causation decided adversely to plaintiffs by the claims court:
 
 
 27
 * * *
 
 
 28
 "Plaintiffs had full and fair opportunity to litigate these issues, which were determined adversely to them, in the Court of Claims case. Therefore, Plaintiffs are precluded from relitigating these issues with Defendant Vecozols, a stranger to the Court of Claims case, under the doctrine of issue preclusion as enunciated in Hicks v. De La Cruz, 52 Ohio St.2d 71 (1977)."
 
 
 29
 On appeal in McCrory, plaintiffs asserted, among other things, that "[t]he trial court erred when it applied the doctrine of collateral estoppel to the present action because the present action involves parties who are neither identical to nor in privity with the parties to the prior action." The court of appeals rejected plaintiff's argument and held:
 
 
 30
 Goodson, supra, at 198-199, indicated that, although Ohio continues to require mutuality for the application of collateral estoppel, the court is " * * * willing to relax the rule where justice would reasonably require it."
 
 
 31
 The Supreme Court, in Goodson, supra, explained the prerequisites for relaxation of the rule of mutuality:
 
 
 32
 "This court in effect was stating in Hicks ... that under those facts where it was shown that the party defendant clearly had his day in court on the specific issue brought into litigation within the latter proceeding, the nonparty plaintiff could rely upon the doctrine of collateral estoppel to preclude the relitigation of that specific issue. We believe this exception to the principle of mutuality to be a proper one.... "The main legal thread which runs throughout the determination of the applicability of res judicata, inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be 'heard' in the due process sense...." Goodson, supra, at 200-201.["]
 
 
 33
 In holding that the case then before the court was a proper one for relaxing the rule, the Court of Appeals focused on the fact that the issue plaintiffs were pursuing had been "fully, fairly, and necessarily adjudicated" in the earlier proceeding. Similarly, the court noted that "plaintiffs had every incentive to litigate vigorously and fully."
 
 
 34
 As was the case in McCrory, and as we have concluded above, the issues raised by plaintiff in the instant action were "fully, fairly, and necessarily adjudicated" in the prior criminal proceeding. Similarly, facing exposure to criminal liability, plaintiff certainly had "every incentive to litigate vigorously and fully." Thus, if the district court erred at all, the error is not plain and obvious, and manifest injustice would not result from our refusal to hear it for the first time on appeal.
 
 III.
 
 35
 In conclusion, absent some exceptional circumstances, we are unpersuaded that pro se litigants in civil cases should be permitted to raise issues for the first time on appeal. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 36
 RYAN, Circuit Judge, concurring in part and dissenting in part.
 
 
 37
 While I concur fully in the court's opinion that appellant Freeman's claim that he was not afforded a full and fair opportunity to litigate his privacy claim in the state court is without merit, I do not agree with the court's treatment of Freeman's claim concerning the collateral estoppel defense.
 
 I.
 
 38
 As the court correctly recounts, the district court granted summary judgment in favor of all defendants on the grounds of collateral estoppel because it found that Freeman's motion to suppress the evidence obtained in the telephone call had been fully and fairly litigated in the state court. Freeman's pro se memorandum in response to Ramada Inn's motion for summary judgment in the district court did not raise the mutuality of parties requirement of the collateral estoppel issue that Freeman raises here for the first time on appeal. Instead, his response to the Ramada Inn motion was concerned with the threshold procedural claim that the record before the district court was inadequate to permit it to determine whether his privacy claim in the state prosecution had been fully and fairly litigated. It is quite correct, therefore, that he raises here for the first time his claim that the district court erred in granting summary judgment in favor of all defendants on the theory of collateral estoppel for the reason that, under Ohio law, the general rule is that mutuality of parties is a requirement for application of the doctrine of collateral estoppel.
 
 
 39
 Ordinarily we do not entertain issues on appeal which have not been raised in the district court. That general rule is subject to a whole host of exceptions, however, including this court's discretion to consider an issue on appeal for the first time if, in our judgment, justice so requires. A constituent subpart of that exception is the familiar canon that pro se litigants are not held to the same standard of strictness of practice as are litigants represented by counsel.
 
 
 40
 The court declares that "the appropriate time for plaintiff to have raised the mutuality issue was in his brief in response to the motion for summary judgment." That is quite correct, just as it is correct that the individual defendants, who were represented by counsel below, should have filed motions for summary judgment and did not, despite which the trial court granted summary judgments in their favor, reasoning that the issue was raised in their answers. Consequently, even though no summary judgments were properly requested by the individual defendants, the trial court granted them anyway, because the judgments were warranted and the trial court had discretion to depart from the strict letter of the summary judgment rule.
 
 
 41
 With understandable layman's logic, Freeman sought to defend against the summary judgment request that was filed by arguing that the district judge did not have enough of the state court records before him to be able to learn whether or not the "interrupted phone call" privacy issue had been fully litigated in the state court. If Freeman had enjoyed pro se success on that critical procedural issue, there would have been no occasion to brief and argue the substantive "mutuality" issue. Lawyers know better than that; they know that the rules require that all issues, procedural and substantive, must be raised at the outset to avoid piecemeal litigation and to assure more efficient use of judicial time and resources.
 
 
 42
 When Freeman lost on the procedural issue, he sought to obtain leave of the district court to file a brief on the collateral estoppel issue, concededly out of time, and was refused; following which the district court disposed of the case on that very issue.
 
 
 43
 Clearly the district court had discretion to grant or refuse Freeman's request to file, out of time, his papers raising the mutuality issue in opposition to Ramada Inn's summary judgment motion. Similarly, the court had discretion to refuse to award summary judgment to the individual defendants who, despite being represented by counsel, had filed no motions for summary judgment but who, without request, enjoyed the court's discretionary decision to treat their answers as though they were motions for summary judgments. It must be difficult for Freeman, the pro se convicted criminal litigant, to appreciate why the district court, in this civil rights action, would elect to cut square corners and refuse Freeman the request to file his papers out of time but, on the same issue and in the same case, award dispositive judgments to individual defendants represented by counsel who filed no papers to request such judgments at all. The point is made here not to criticize the discretionary call made by the district court who knew a great deal more about the case, the litigants, the parties, their counsel, and the litigation in general, than can be discerned from this appellate remove; moreover, counsel for the Ramada Inn did file a timely request for motion for summary judgment and neither requested nor enjoyed the favorable exercise of the trial court's discretion as the individual defendants did. Rather, the point is made to suggest an equitable reason why, in my judgment, the leniency ordinarily granted to pro se parties who wish to raise an issue for the first time on appeal, should be extended to Freeman in this case.
 
 
 44
 Even more troublesome to me is the determination of the court that Freeman's request to raise an important and conceivably dispositive issue for the first time on appeal should not be granted because his pro se performance was so good, and his pleadings so well researched and written, that his "need for favorable treatment is, if not absent, decreased." The effect of that reasoning is that the standard of practice applied to litigants who are represented by counsel is applied to Freeman who was without counsel because his pro se performance was above average. No authority is suggested for that proposition.
 
 
 45
 I would not, in this case, create for this pro se litigant, because his performance was better than most, a standard that is not applied to pro se litigants generally.
 
 II.
 
 46
 The court concludes that since Freeman will not be excused for failing to raise the mutuality issue in a timely fashion before the trial court, the only question for us is whether our failure to consider the issue for the first time on appeal would amount to a manifest injustice because the validity of the appellant's mutuality argument is so "plain and obvious."
 
 
 47
 I agree with my brothers that "the correct resolution of this issue is not obvious." It is a very complex question. Whether Ohio law requires mutuality demands a careful analysis of a number of Ohio authorities and a reconciliation of apparently conflicting decisions. It would appear that the district court did not engage in that analysis since no mention is made in the district court's memorandum opinion of the requirements of Ohio law, and the court cited only Montana v. United States, 440 U.S. 147 (1979), and Allen v. McCurry, 449 U.S. 90 (1980). However, as in Migra v. Warren City School District Board of Education, 465 U.S. 75 (1984), it is impossible to tell with certainty whether the district court applied Ohio law of issue preclusion in this case.
 
 
 48
 Because an examination of the Ohio authorities suggests that a very persuasive case can be made for the proposition that the mutuality doctrine is an essential component of the defense of collateral estoppel under Ohio law, and since the trial court in this instance granted dispositive judgment on the doctrine of collateral estoppel apparently without any consideration of the requirements of Ohio law, I would remand the case to the district court with direction to consider and apply the Ohio law of issue preclusion in determining whether Freeman was collaterally estopped from bringing his claims in the case before us.
 
 
 49
 I would direct remand despite the fact that the issue was not timely raised below because I think the issue is critical to a correct resolution of the case before us, and because I would apply the general rule which treats indulgently the failure of a pro se litigant to raise timely at trial difficult, complex, and sophisticated issues which may be outcome determinative.
 
 
 
 *
 Honorable William O. Bertelsman, Judge, United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Ohio Rev.Code Secs. 2933.58(A), 4931.26, 4931.28, and 4931.29
 
 
 [2]
 Plaintiff's argument that the issue would have been raised before the district court is apparently based on the following statement which appears at page 11, footnote 7, of the brief submitted with plaintiff's motion for leave to file the brief:
 Moreover, the Defendant was not a party to the criminal action at the state level, therefore, it is questionable whether same (collateral estoppel) can now be advanced as a viable defense by the Defendant.
 Even if the district court had granted plaintiff's motion to file this reply brief, and even if it would have been permissible to raise a new issue in the reply brief, it is questionable whether this lone comment would have fairly presented the issue to the district court thereby preserving the issue for appeal.
 
 
 [3]
 It was plaintiff's pro se brief, not the court-appointed counsel's brief, which first raised the issue of mutuality
 
 
 [4]
 We recognize that Rule 2 of the Ohio Supreme Court Rules for the Reporting of Opinions provides that unofficially published opinions are not (with limited exceptions) controlling authority. However, the case is cited only to show that an argument contrary to plaintiff's is not only plausible but indeed has been accepted by the Ohio courts